No. 2013-1640

IN THE

# United States Court of Appeals for the Federal Circuit

———————————

FENNER INVESTMENTS, LTD.,

Plaintiff-Appellant,

v.

CELLCO PARTNERSHIP (doing business as Verizon Wireless),

Defendant-Appellee.

———————————

Appeal from the United States District Court for the Eastern District of Texas in case no. 11-CV-0348, Chief Judge Leonard Davis

———————————

**NON-CONFIDENTIAL BRIEF FOR APPELLANT**

———————————

JONATHAN S. FRANKLIN
MARK EMERY
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

November 12, 2013                    Counsel for Appellant

Form 9

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FENNER INVESTMENTS, LTD.     v. CELLCO PARTNERSHIP

No. 2013-1640

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) Fenner Investments, Ltd.     certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:


Fenner Investments, Ltd.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:


N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Fenner Investments, Ltd. has no parent company.  No publicly held corporation owns 10% or more of the stock of Fenner Investments, Ltd.

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jim L. Flegle, Corey Jennifer Weinstein, and Peter J. Thoma of Loewinsohn Flegle Deary LLP
Jonathan S. Franklin and Mark Emery of Fulbright & Jaworski LLP

| Sept. 20, 2013 | /s/ Jonathan S. Franklin |
|---|---|
| Date | Signature of counsel |
|  | Jonathan S. Franklin |
|  | Printed name of counsel |

Please Note: All questions must be answered
cc: All counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES .................................................. vi

INTRODUCTION ............................................................................... 1

STATEMENT OF JURISDICTION .................................................... 3

STATEMENT OF THE ISSUE ........................................................... 3

STATEMENT OF THE CASE ............................................................ 3

STATEMENT OF THE FACTS .......................................................... 5

    A.    The '706 Patent's Claims ....................................... 5

    B.    Fenner's Infringement Allegations ......................... 12

    C.    The District Court Proceedings ................................ 14

SUMMARY OF ARGUMENT ............................................................ 17

ARGUMENT ....................................................................................... 20

    I.    STANDARD OF REVIEW .................................................. 20

    II.    THE DISTRICT COURT ERRED IN CONSTRUING THE TERM "PERSONAL IDENTIFICATION NUMBER" ................... 20

        A.    The District Court Improperly Imported A Negative Limitation That Is Inconsistent With The Claim Language ................................................................ 21

        B.    The District Court's Negative Limitation Is Not Compelled By The Specification ............................... 31

        B.    The District Court's Negative Limitation Is Not Compelled By The Prosecution History .................... 38

CONCLUSION .................................................................................... 44

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

STATEMENT OF CONFIDENTIAL MATERIAL OMITTED

Confidential material subject to a protective order has been omitted from this brief.  The material omitted on pages 13 and 14 is from expert declarations filed under seal in the district court that describes the operation of Verizon's accused network.

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315
(Fed. Cir. 2013)............................................................................32

*Astrazeneca L.P. v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010) ..................26

*Aventis Pharm. v. Amino Chemicals Ltd.*, 715 F.3d 1363 (Fed. Cir.
2013) .......................................................................... 2, 44

*Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001)....................32

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d
1440 (Fed. Cir. 2000) ....................................................................28

*Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182
(Fed. Cir. 1998)............................................................. 21, 22

*Conoco, Inc. v. Energy & Envtl. Int'l L.C.*, 460 F.3d 1349 (Fed. Cir.
2006) ........................................................................31

*Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir.
2009) ........................................................................39

*Creative Integrated Sys. v. Nintendo of Am.*, --- Fed. App'x ---, 2013
WL 2378555 (Fed. Cir. June 3, 2013) (nonprecedential) ................................3

*Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ...................20

*D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570 (Fed. Cir. 1985).................... 28, 29

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l Co.*, 214 F.3d 1302
(Fed. Cir. 2000)............................................................................42

*Energy Transp. Group, Inc. v. William Demant Holding A/S WDH,
Inc.*, 697 F.3d 1342 (Fed. Cir. 2012) .............................................22

*Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321 (Fed. Cir. 2009)............38

*Fenner Investments, Ltd. v. Juniper Networks, Inc.*, No. 2:05-cv-5
(E.D. Tex.) ........................................................................12

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l*, 389 F.3d 1370 (Fed. Cir. 2004) ...........................................................26

*Highmark, Inc. v. Allcare Health Mgmt.*, 687 F.3d 1300 (Fed. Cir. 2012) ..................................................................................20

*Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352 (Fed. Cir. 2004) ...................................................................................38

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008).......................................................... 2, 44

*Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760 (Fed. Cir. 1983), *overruled on other grounds by SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) .....................................................28

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ............20

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc) ......................................................................................21

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ........................20

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ..........30

*Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003)........................................................... 22, 24, 38, 44

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........... 21, 38

*Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343 (Fed. Cir. 2013) .....................38

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983) .........................22

*Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929 (Fed. 2013)...................................................................................37

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) .......................................................... 1, 22

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995)...................................................................................38

iv

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371 (Fed. Cir. 2002), *vacated and remanded on other grounds*, 537 U.S. 802 (2002) ........................................................................................... 25

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) .................................................................. 31

*Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010) ............................................................................ 38

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044 (Fed. Cir. 1988) .......... 28

*United States v. Telectronics, Inc.*, 857 F.2d 778 (Fed. Cir. 1988) ................. 28

*Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......... 21

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571 (Fed. Cir. 1997) ................................................................................. 42

## STATUTES:

28 U.S.C. § 1295 ............................................................................... 3

28 U.S.C. § 1331 ............................................................................... 3

28 U.S.C. § 1338(a) .......................................................................... 3

## OTHER AUTHORITIES:

Sam Ginn, *Personal Communications Services: Expanding the Freedom to Communicate*, IEEC Communications Magazine (Feb. 1991) .......................................................................................... 37

*Newton's Telecom Dictionary* (20th ed. 2004) ................................... 36

*Dictionary.com Unabridged*, Random House, Inc. (Nov. 2013) ....................... 35

## STATEMENT OF RELATED CASES

Appellant states that no other appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court.  Counsel for appellant is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

IN THE

# United States Court of Appeals for the Federal Circuit

—————————

No. 2013-1640

—————————

## FENNER INVESTMENTS, LTD.,

Plaintiff-Appellant,

v.

## CELLCO PARTNERSHIP (doing business as Verizon Wireless),

Defendant-Appellee.

—————————

Appeal from the United States District Court for the Eastern District of Texas in case no. 11-CV-0348, Chief Judge Leonard Davis

—————————

## NON-CONFIDENTIAL BRIEF FOR APPELLANT

—————————

## INTRODUCTION

In conducting its claim construction in this case, the district court unfortunately committed "one of the cardinal sins of patent law—reading a limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). Appellant Fenner Investments, Ltd. ("Fenner") respectfully requests that this Court correct that error and adopt a claim construction unburdened by the negative limitation improperly added by the district court.

The patent at issue claims a method for providing access to a mobile telephone network and routing mobile telephone calls using the "personal identification numbers" of the caller and the recipient.  Relying primarily on a single sentence in the written description, the magistrate judge (in an order adopted by the district court) held that the claimed "personal identification number" necessarily is associated with the individual system user, but "*is not associated with the device*."  A10 (emphasis added).

As explained below, nothing in the claim language imparts the negative limitation added by the court.  Moreover, this limitation would render claims of the patent inoperable.  The patent describes a method of routing and connecting a call by ringing a personal identification number (*i.e.*, a mobile phone number), which is literally impossible to do unless the number is associated in some way with the device that is being rung.  And nothing in the specification or prosecution history overrides the claim language thereby rendering the patent inoperable.

The district court entered a stipulated judgment of non-infringement based on this claim construction, subject to Fenner's right of appeal.  Because that judgment was based on an erroneous claim construction, the judgment should be reversed or vacated and the case remanded for further proceedings on the merits. *See*, *e.g.*, *Aventis Pharm. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1365 (Fed. Cir. 2013); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337,

1339 (Fed. Cir. 2008) ("Because we conclude that the construction of this claim term was incorrect, we cannot sustain the stipulated judgment."); *see also Creative Integrated Sys. v. Nintendo of Am.*, --- Fed. App'x ---, 2013 WL 2378555, *1 (Fed. Cir. June 3, 2013) (nonprecedential) (A2651-61)

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Fenner appeals from a final judgment of non-infringement entered after the dismissal of all other claims and counterclaims.  *See* A1-2, A2641-44. This Court has subject matter jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1295.

## STATEMENT OF THE ISSUE

Whether the district court erred in its construction of the term "personal identification number" in U.S. Patent 5,561,706.

## STATEMENT OF THE CASE

Fenner filed this patent infringement suit on July 6, 2011 against Cellco Partnership d/b/a Verizon Wireless ("Verizon"), MetroPCS Communications, Inc., MetroPCS Wireless, Inc., and MetroPCS Texas, LLC, alleging patent infringement.  A22.  After the initial complaint was dismissed, A105-10, Fenner filed its amended complaint on March 29, 2012, alleging that the defendants infringed Claim 1 of the '706 patent, and seeking a judgment of infringement,

injunctive relief, damages, and attorney's fees.  A111-18.  Verizon counterclaimed

for a declaratory judgment of invalidity and noninfringement.  A138-39.  Pursuant

to a settlement between Fenner and the three MetroPCS entities, all claims between

those parties were voluntarily dismissed.  A2041-46.  The MetroPCS entities are

therefore not parties to the final judgment or this appeal.

 The defendants sought permission to file motions for summary judgment of

non-infringement, but were denied.  A199-200.  However, on January 15, 2013,

the magistrate judge granted leave to file early *Markman* hearing and summary

judgment briefing on infringement and other defenses, to enable the consideration

of claim construction issues.  A199-202.  After a hearing, the magistrate judge

issued a provisional claim construction order, A1831-32, and on April 25, 2013

issued a Report and Recommendations ("R&R").  A3-15.  The R&R

recommended denial of Verizon's motion for summary judgment, and construed

several contested claim elements of the '706 patent, including the term "personal

identification number."  *Id*.

 On July 30, 2013, the district court entered an order fully adopting the R&R,

including the construction of "personal identification number," and overruling both

Fenner's and Verizon's objections and motions for reconsideration of the R&R.

A16-17.  On August 7, 2013, based on the court's claim construction, Fenner and

Verizon stipulated to and jointly moved for dismissal of all remaining claims and

counterclaims in this case and for entry of final judgment of non-infringement in favor of Verizon, subject to Fenner's right to appeal. A2641-42. Final judgment of non-infringement of the '706 patent was entered on August 8, 2013. A1-2. Fenner timely appealed from the final judgment. A2648-50.

## STATEMENT OF THE FACTS

### A.     The '706 Patent's Claims.

Peter Fenner is an inventor who lives in Richardson, Texas, and is the principal of Fenner, the entity that holds the '706 patent. A46, A113. The '706 patent was filed on September 29, 1992, and issued on October 1, 1996. *Id*.

When Fenner's patent application was filed in 1992, telephonic communications consisted of switching units associated with individual telephones, with billing and system management procedures similarly associated with telephones in a household or business. A51 (1:16-20). When a telephone was used to make a call, billing charges were associated with the telephone, not the individual making the call. *Id*. (1:21-22). As a result of the historic area code system, telephone numbering and addressing systems were geographically oriented and the source telephone numbers (*i.e.*, of the person making the call) and the destination telephone numbers (*i.e.*, of the person receiving the call) were "always predictable and in set locations." *Id*. (1:32-35).

The '706 patent's inventions were developed under the concept of "personal communications services" or "PCS." *Id*. (1:24-26). In the PCS system, each telephone user has a "personal identification number," which is "not geographically constant and can move about." *Id*. (1:36-37). Fenner contends that this personal identification number corresponds to the familiar 10-digit mobile telephone number used by modern mobile phone networks. At the time of the invention, there was no system that allowed these portable personal identification numbers to have multiple service profiles such that the user could set up and connect calls for different services and bill each service in a different manner.

The '706 patent discloses a mobile address management system directed to this problem. It consists of several basic parts. Users are identified by "personal identification numbers" that can be located geographically and can be used to both initiate and receive calls by and to specific devices. The system uses "location authorities" to track the locations of the personal identification numbers. *Id*. (2:63-3:2). The system also uses multiple "billing authorities," each of which has access to a database of personal identification number "service profiles" that the billing authority manages. *Id*. (1:55-56, 2:41-42). Service profiles describe "the services for which a personal identification number is authorized;" *i.e.*, the "services available to a particular personal identification number ...." *Id*. (1:57-58, 2:45-46).

A personal identification number can have more than one service profile, such as for personal and business calls. *Id*. (1:60-62).

The '706 patent consists of 19 claims, four of which are independent (Claims 1, 10, 15, and 18). All claimed methods are performed in a "communications system" (*e.g*., Claims 1 and 10), or "communications network" (*e.g*., Claims 15 and 18), and all involve use of a "radio frequency communication switch" or similarly designated "switch." The patented methods are not limited to voice calls, and can include data communications as well. *Cf.* A1329 (agreed construction of "call" not limited).

Claim 1 discloses a method of providing access to a mobile user in a communications network for connecting mobile calls. It comprises the steps of receiving at a switch a "personal identification number" and associated "billing code" from the mobile user; requesting a "service profile" of the user from a "billing authority" identified by the billing code; and "providing the mobile user access to the switch." A53 (5:61-6:17). This method thus uses the "personal identification number" of the user to provide the user's telephone with access to the radio switch. Claims 2-9 each disclose other features that depend from Claim 1, as described in the specification. For example, Claim 7 describes the routing of a call to a destination user using the method of Claim 1, in which the switch receives the personal identification number of a destination user (*i.e.*, the person

being called) and routes the call to that user only if calls to the destination user are permitted by the service profile of the source mobile user. *Id*. (6:53-58).

Under this method, the personal identification numbers are used to connect calls between users' telephones. As described in Figure 1 (A48), the personal identification numbers are "able to communicate" with the switch "via a wire line and radio frequency links." A51 (2:33-34). *See also* Figure 2 (depicting internal architecture of the switch) (A48). The personal identification numbers are not associated with any "particular" device or physical location, but are associated with individual users. A51 (2:35-37). The correct billing authority to handle a call is identified by the billing code separate from the personal identification number. *Id*. (2:41-45). The billing authority allows the switch to determine whether to allow calls "to or from a personal identification number," and to determine what services are provided to the user. *Id*. (2:52-56).

Under the method of Claim 1, a user attempts to log on to the switch through the process depicted in Figure 3. When a personal identification number and billing code are received from the user, A52 (4:5-7), the switch determines if the service profile for the personal identification number is located in its directory storage table. *Id*. (4:5-10). If it is not, the switch requests the service profile from the billing authority. *Id*. (4:10-13). If the source switch is not within the service area defined by the service profile, then access is denied. *Id*. (4:17-18). If the

switch is within the service area, then the service profile is returned to the switch. *Id*. (4:18-20).

Once the service profile of the source personal identification number is returned, this service profile is compared to determine the services the switch should provide. *Id*. (4:45-47). If additional information is required, it is requested and supplied. The switch then determines if logon is complete, and notifies the user whether the logon was successful and, if so, the effective connection and usage rate the user will be charged for the requested service. *Id*. (4:51-58).

Independent Claim 18, like dependent Claim 7, is directed to a source-to-destination call processing method. Calls are completed by receiving from a source user the personal identification code of a destination user to whom a call is to be routed (*i.e.*, the number of the person being called) and then determining whether that person is currently logged onto the network. If not, the network identifies a "location tracking authority" assigned to the personal identification number of the destination user, uses that authority to identify the destination switch the destination user is logged onto, and routes the call to that destination switch. A54 (8:33-54).

As the specification makes clear, the claimed personal identification numbers are the telephone numbers of the devices making and receiving calls. After the source personal identification number is logged on to the switch, the

"[personal identification number] may make calls to other [personal identification numbers] or regular wireline telephone numbers." A52 (4:63-65).[1] The source switch, *i.e.*, the switch communicating with the source personal identification number, determines whether the destination number is stored in its directory table, and if so, proceeds to set up the call as a "local call." A52-53 (4:68-5:4). If the destination number is not stored, the switch sends a request to the location authority identified by the "home area code of the destination personal identification number." A53 (5:5-8). This destination location authority determines whether the requested location is "checked out," and if valid, it sends a message to the source switch that "the destination personal identification number is unavailable." *Id*. (5:9-14).

The source switch examines the source personal identification number's service profile to determine whether the destination location is valid. If so, the destination switch is sent a call set-up message. *Id*. (5:28-30). When the destination switch receives the call set-up message, that switch determines if the destination personal identification number is "active or inactive," *id*. (5:31-33), *i.e.*, whether the destination user is already on the phone presently associated with that number. If active, an inquiry is made to determine if a mail box number, call

---

[1] The specification sometimes uses the abbreviation "PID" for "personal identification number." A51 (1:54). In this brief, that abbreviation has been replaced with the full term.

waiting, or other busy service is available.  If not, the system notifies the source user that the destination personal identification number is not available through a busy signal.  *Id*. (5:37-41).  If a mail box number is available, it is returned to the "source caller" and the system goes through the connection steps again.

However, if the destination personal identification number is "not active," *i.e.*, the destination user is not using the associated phone, "the destination switch attempts to ring the destination personal identification number ...."  *Id*. (5:45-47).  And, "[i]f the number does not ring, the source user is notified that "the destination personal identification number is not reachable."  *Id*. (5:48-50).  In the last step, "[i]f the destination personal identification number does ring, the call is either completed or there is no answer," *id.* (5:50-52)—*i.e.*, the destination user answers the phone, or there is no answer.  Through this method, calls are routed to particular devices using personal identification numbers, which requires that the personal identification numbers be associated at the time of the calls with the devices that are making and receiving the calls.  For example, the destination switch cannot "ring the destination personal identification number" unless that number is associated with the device that is being rung and that number is logged onto that switch.

Claim 19 describes an optional feature for practicing claim 18, disclosing "[t]he method of claim 18 wherein the personal identification number of the source

11

and the destination user are independent of a particular physical communications unit." A54 (8:55-57). Thus, in Claim 19 both the source and destination users' personal identification numbers are independent of any "particular" communications unit. But for the method to operate, each must still be associated with some device in order for there to be calls to be routed by the patented method, as described in the specification.

### B.    Fenner's Infringement Allegations.

In 2005, Fenner sued several telecommunications equipment suppliers for infringing two of its patents, including the '706 patent. *See Fenner Investments, Ltd. v. Juniper Networks, Inc.*, No. 2:05-cv-5 (E.D. Tex.). In the *Juniper* case, the term at issue in this case ("personal identification number") was construed after a *Markman* hearing and all defendants subsequently settled with Fenner. *See id*. (Doc. 389 at 7-8); A249-50.

This case involves different accused equipment. Specifically, the suit against Verizon is directed to the initial signaling events that happen when a properly equipped mobile device is turned on within, or while a turned-on mobile device travels into or through, a Verizon coverage area operating with CDMA2000 1x EVDO Rev. A technology. *See* A174.[2] Between December 2006 and June

---

[2] "EVDO," or "EV-DO," refers to "Evolution Data Optimized," which is part of a family of standards, known as CDMA2000, that evolved to provide high data rate 3G mobile broadband Internet access. *Id.*

2007, Verizon upgraded its wireless network to 3G mobile broadband using this technology. *Id.* In its amended complaint, Fenner alleged that Verizon infringed the '706 patent by performing, or directing or controlling the performance of, Claim 1's method of determining whether a mobile user will be given access to data communication services through its network. *See* A115-16 (¶¶ 23-27).

While only claim construction is at issue here, Fenner's expert illustrated the operation of the accused device as it pertains to Verizon's system. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ The NAI is "[t]he user identification submitted by the mobile station during network access authentication." *Id.* (¶ 12). The NAI is sent by the mobile user's cell phone when the mobile user turns on his or her cell phone in a Verizon Wireless coverage area. A1430 (¶ 20); A1474; A174. The cell phone registers with the network upon power-up, and upon successful registration, is ready for voice and data calls. A1428 (¶ 10); A1474.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████

████████████████████████████████

Although the user's mobile number is associated with the phone that is being used for a call, it need not always be associated with that particular phone. Under the "Wireless Number Portability" mandated by the Federal Communications Commission, end users are permitted "to retain the same telephone number as they change from one service provider to another." A1427 (¶ 14). Upon initiating service with Verizon, a subscriber may direct Verizon to port into its system the subscriber's mobile phone number previously used with another service provider and program it into a selected cell phone as part of the NAI. A1428 (¶ 15). Fenner asserts that the MDN corresponds to the claimed "personal identification number" because it is a number, separate from a billing code (which is the "realm" identifier), that identifies an individual system user. A116 (¶¶ 25-26); A176.

### C.    The District Court Proceedings.

In the district court, the parties disputed the construction of several terms, including the term "personal identification number." In the *Juniper* case, Magistrate Judge Love—the same magistrate judge who construed the claims in this case—construed that term to mean "a number, separate from a billing code (as construed herein), identifying an individual system user." A250. In this case, Fenner proposed precisely the same construction of that term. *See* A1328-31.

Verizon, however, proposed a construction with an additional negative limitation. It proposed defining "personal identification number" as "[a] number, separate from a billing code (as construed herein), identifying an individual system user, *which is associated with the individual and is not associated with the device*." A1329 (emphasis added).

Following letter briefing by the parties and a hearing, Magistrate Judge Love—without explaining his apparent shift in views since the *Juniper* case— entered a Provisional Claim Construction Order on March 6, 2013 that adopted Verizon's proposed construction. A1831-32. Subsequently, the magistrate judge issued his R&R, recommending the same construction. A7-10. Following further briefing, the district court fully adopted the R&R. A16-17.

The district court relied on three principal findings.[3] First, the court found that "[t]he claim language recited in Claim 1 expressly associates the personal identification number with the mobile user." A9 (citing A53 (6:4, 10–11), which refers to a "personal identification number from a mobile user," and the "mobile user identified by the personal identification number"). Second, the court concluded that "[t]he specification supports this association," by disclosing that "[t]he personal identification numbers 2 [in Figure 1] are not associated with any

---

[3] Because the R&R was fully adopted by the district court, Fenner refers to the findings and conclusions in the R&R as those of the district court.

particular communications unit or physical location but are associated with individual users." A9 (quoting A51 (2:31-37)).  Third, the court relied on one sentence in the prosecution history in which Fenner distinguished a prior art patent by noting that "[t]he present invention, on the other hand, is centered around the mobile user, not the mobile telephone."  A9; *see* A2509.

The district court rejected Fenner's argument the "personal identification number" claimed in the patent need not be disassociated with a device because Claim 19 recites a personal identification number that is independent of a particular device, whereas no similar limitation appears in Claim 1 and other claims.  In the court's view, it was relevant that "Claim 19 depends from Claim 18, a separate independent claim from asserted Claim 1, which recites many differences, including a 'personal identification code.'" A9 (quoting A54 (8:40)). Further, the court found that "while Claim 19 recites a 'personal identification number,' that claim is directed to an embodiment where both source and destination users have a personal identification number." *Id*.  The court concluded that Fenner's arguments were "not persuasive in light of the express language in Claim 1, the specification, and the prosecution history, all of which disclose a personal identification number associated with the mobile user." A9-10.  The court therefore construed "personal identification number" as "a number separate

from a billing code (as construed herein), identifying an individual system user, which is associated with the individual and not the device." A10.

On July 30, 2013, the district court issued an order overruling both parties' objections to the R&R and concluding in response to Fenner's objection that the magistrate judge's construction of the "personal identification number" term "requires no further clarification or alteration." A16. Based on the court's construction of that term, Fenner and Verizon stipulated to a final judgment of noninfringement, subject to appeal. A2641-46. The district court entered that final judgment, A1-2, and Fenner timely appealed. A2648-50.

## SUMMARY OF ARGUMENT

The district court improperly imported into its construction a negative limitation purportedly drawn from the specification—defining the term "personal identification number" as a number that is associated with an individual but "***not associated with the device***." A10 (emphasis added). Nothing in the language of the claims supports, much less compels, this additional limitation. Nor is the plain language of the claims overridden by the specification or prosecution history.

The plain meaning of a personal identification number is a number that identifies a person. That requires that the number be associated with a person, but does not additionally require that the number must always be ***dis***associated with a device. And, in fact, such a limitation would render claims of the patent

inoperable.  The patent discloses a method for connecting telephone calls using the personal identification numbers of the person calling and the person being called.  That cannot be done unless the personal identification numbers are associated in some way with the devices that are calling and being called.  The district court's imported limitation is further belied by the language of Claim 19, which expressly provides that the personal identification number used in that claim is "independent of a particular physical communications unit."  Under settled law, the narrow express limitation of Claim 19 cannot be read into the same term as used in the remainder of the claims, which contain no such limitation.

In reaching a contrary conclusion, the district court relied on one sentence of the specification but that sentence contains no categorical limitation that overrides the plain language of the claims and renders the patent inoperable.  This sentence states that personal identification numbers are not associated with any "*particular* communications unit or physical location but are associated with individual users." A51 (2:34-37) (emphasis added).  The sentence does not categorically disassociate personal identification numbers from the devices used to make or receive telephone calls.  The personal identification number need not be permanently associated with any *particular* device or physical location, but in order for the patent's methods to operate, it will be associated with *some* device and location when a call is being made or received.  This is obvious from the specification,

18

which describes a personal identification number as something that "rings" and can be "located."  The district court's broad negative limitation improperly renders these provisions senseless and claims of the patent inoperable.

The district court's reliance on the prosecution history was also misplaced. The district court relied on a single statement, made in the context of distinguishing a prior art reference, that Fenner's invention "is centered around the mobile user, not the mobile telephone."  A2509.  Understood in context, Fenner merely distinguished prior art in which users' services were "centered around" a mobile telephone's geographic "home exchange."  By contrast, Fenner's invention was "centered around" the user, whose number does not need to be routed through the mobile phone's home exchange because a separate billing code does the work of identifying billing authorities that maintain service profiles.  Thus, in the statement relied on by the district court, Fenner merely described a system in which a mobile user need not be "associated" with a "home exchange," but said nothing that pertained to—much less clearly and unmistakably disavowed—any and all association between the personal identification number and a device.

For these reasons, the district court erred in its construction of "personal identification number," which should instead be construed without the negative limitation imported by the district court to mean "a number, separate from a billing code (as construed herein), identifying an individual system user."  Because the

stipulated final judgment of non-infringement was predicated on this erroneous claim construction, that judgment should be reversed and the case remanded for further proceedings.

## ARGUMENT

### I.    STANDARD OF REVIEW.

Claim construction is a matter of law that the Court reviews *de novo*. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) ("as a purely legal question, we review claim construction *de novo* on appeal including any allegedly fact-based questions relating to claim construction").

### II.   THE DISTRICT COURT ERRED IN CONSTRUING THE TERM "PERSONAL IDENTIFICATION NUMBER."

The district court's construction of "personal identification number" adds a negative limitation that is contrary to the patent's claim language and renders claims of the patent senseless and inoperable.  And this is not a case where "the specification and prosecution history clearly refute [the patentee's] proposed claim construction."  *Highmark, Inc. v. Allcare Health Mgmt.*, 687 F.3d 1300, 1315 (Fed. Cir. 2012) (quoting *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012)).  Far from it.  The district court imported its negative limitation by misapplying the specification and the prosecution history, neither of which

20

disclaim the scope of Claim 1 by categorically disassociating the "personal

identification number" from any and all devices.

### A. The District Court Improperly Imported A Negative Limitation That Is Inconsistent With The Claim Language.

Claim construction analysis begins with the language of the claims

themselves.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)

(en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.

1996) ("we look to the words of the claims themselves ... to define the scope of the

patented invention"); *Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186

(Fed. Cir. 1998) ("The appropriate starting point ... is always with the language of

the asserted claim itself.").  Terms are "generally given their ordinary and

customary meaning," which is the meaning that the term would have to a person of

ordinary skill in the art in question at the time of the invention.  *Phillips*, 415 F.3d

at 1312-13.  The context in which a term is used in the asserted claim can be

"highly instructive," *id.* at 1314, but other claims, both asserted and unasserted, can

also provide additional instruction because "terms are normally used consistently

throughout the patent."  *Id*.  Differences among claims, such as additional

limitations in dependent claims, can provide further guidance.  *Id*.  And claims

"must be read in view of the specification, of which they are a part."  *Markman v.

Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).

As noted, it is "one of the cardinal sins of patent law" to "read[] a limitation from the written description into the claims." *SciMed Life Sys.*, 242 F.3d at 1340. *See Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"). "While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims." *Energy Transp. Group, Inc. v. William Demant Holding A/S WDH, Inc.*, 697 F.3d 1342, 1349 (Fed. Cir. 2012). *See also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."); *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003) (reversing district court's inclusion of negative limitation).

The district court violated that settled principle in this case. It improperly imported into its construction a negative limitation purportedly drawn from the specification. The court defined the term "personal identification number" as a number that is associated with an individual user but "***not associated with the device.***" A10 (emphasis added). Thus, the court construed the term to exclude any and every association between a mobile user's personal identification number and the user's mobile telephone device. *See*, *e.g.*, A1981 (statement by magistrate judge that the personal identification number "has got to have no association with

22

the device at all under [Verizon's] construction" meaning that there must be a "total disassociation with the device"). As applied to Verizon's system, that added negative limitation (as Fenner stipulated) leads to non-infringement because the personal identification numbers used by Verizon are installed in phones when they are activated on Verizon's network. *See supra* at 12-14.

That negative limitation, however, is nowhere found in or compelled by the claim language and would actually render claims of the patent inoperable. To begin with, nothing in the plain language of the term supports, much less compels, this limitation. In the *Juniper* case, the magistrate judge construed the term "personal identification number" as "a number, separate from a billing code … identifying an individual system user." A250. That construction was correct and should be adopted by this Court. The plain, obvious, and common sense meaning of a "personal identification number" is a number that identifies a person. And the patent claims, on their face, distinguish the personal identification number from the billing code, *see*, *e.g.*, A53 (6:3-11), warranting the additional qualification imparted by the *Juniper* court. Thus, both parties agreed on the basic proposition that a personal identification number is a number, separate from a billing code, identifying a system user.

But there is nothing inherent in the term "personal identification number," particularly in the context of mobile telephones, that further precludes any

association with a user's device.  The opposite is true.  Users of mobile telephone networks are typically identified by numbers—their mobile telephone numbers—that are necessarily associated with whatever device is calling or being called at a particular time.  Although a mobile telephone number can be associated with different phones at different times—for example, when a user buys a new phone—it will be associated with some device when a call is being made or received.

Contrary to the district court's apparent understanding, the claims of the '706 patent do not depart in any way from this normal, common sense understanding of a personal identification number.  The court cited two clauses in Claim 1 that refer to the "personal identification number from a mobile user;" and "mobile user identified by the personal identification number."  *See* A53 (6:4, 10-11).  From this, the court summarily concluded that "[t]he claim language recited in Claim 1 expressly associates the personal identification number with the mobile user."  A9.  That much is undisputed.  Indeed, Fenner's own proposed construction of "personal identification number" construes the term to mean "[a] number, separate from a billing code … identifying an individual system user."  A1329.  But "associat[ing] the personal identification number with the mobile user," A9, does not mean ***dis***associating the number from the device.  That negative limitation "finds no anchor in the explicit claim language," *Omega*, 334 F.3d at 1322, which

associates the personal identification number with an individual user but does not *prohibit* association of the number with a device.

In fact, the language of Claim 1 indicates the opposite.  Claim 1 describes "[a] method of providing access" to a mobile user to a communications switch. The first step of the method involves receiving a personal identification number at a switch, and that number is used—via a "service profile" identified with the user—to "provid[e] the mobile user access to the switch."  A53 (5:61-65, 6:16).  It is undisputed that a mobile user must be provided access to the switch through a device, because a human being cannot communicate with such a switch except through a compatible radio-equipped cell phone or other wireless unit.  *See* A1429 (¶ 21); A1473; A1425 (¶ 3); A193.  Thus, the language of Claim 1, on its face, indicates that the user's device must be associated in some way with the personal identification number when a call is being made or received, since it is that number that is used to provide the device with access to the switch.

That the district court imported a negative limitation contrary to the claim language is reason enough to reverse its construction.  But the district court's error went even further because its construction actually renders claims of the patent inoperative.  It is settled that a "a construction that renders the claimed invention inoperable should be viewed with extreme skepticism."  *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1376 (Fed. Cir. 2002), *vacated and remanded*

*on other grounds*, 537 U.S. 802 (2002).  The Court has therefore rejected

constructions that would render patents inoperable.  *See AstraZeneca L.P. v.*

*Apotex, Inc.*, 633 F.3d 1042, 1053 n.1 (Fed. Cir. 2010) (rejecting construction

where "the claimed invention would be inoperable if the claims are construed in

the manner suggested by Apotex"); *Frank's Casing Crew & Rental Tools, Inc. v.*

*Weatherford Int'l*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) (rejecting construction

where it "would render the patent internally inconsistent and the invention

inoperable").  Yet that is exactly what the district court's construction of personal

identification number would do.  Given the lack of any support in the claims for

the limitation, there is no basis to adopt this disabling construction.

Claim 7, dependent on Claim 1, discloses a method of routing calls,

comprising "receiving [the] personal identification number of a destination user"

and "routing the call to the destination user …."  A53 (6:53-58).  *See also* A54

(8:33-54) (similar routing method disclosed in Claim 18).  A call, of course, cannot

be routed to the person being called except through that person's phone.  It

therefore follows that the personal identification number that is the basis for

routing that call must be associated with the device being called.  If the district

court's construction were adopted, however, the destination user's personal

identification number could never be associated with a device and no call could

ever be routed using the method of Claim 7.  There could be no way to connect a

call if the personal identification number being called has no association with any device.  Mobile users want to receive calls wherever they are located whenever someone wants to call them.  The network cannot do this unless the personal identification numbers used to connect the calls are associated with the devices that are in communication with the cell towers.  To be reachable at any time, a user's personal identification number must be associated with a device.

The specification makes this clear.  Figure 4 refers to "the procedure for connecting the source personal identification number to the destination personal identification number."  A52 (4:59-61).  Under this method, which is delineated in Claims 7 and 18, the source personal identification number "may make calls to other [personal identification numbers] or regular wireline telephone numbers." A52 (4:63-65).   This shows that the personal identification numbers can be, and typically will be, users' phone numbers that are associated with the devices making and receiving the calls.   Under the call routing methods, if "the destination personal identification number is not active [*i.e.*, not in use], the destination switch attempts to ring the destination personal identification number."  *Id*. (5:45-47).  If the "number does not ring," the source user is "notified the destination personal identification number is not reachable;" but "[i]f the destination personal identification number does ring, the call is either completed or there is no answer ...."  *Id*. (5:45-52).

27

These methods cannot operate if there can never be any association between the personal identification number and the device as the district court's construction provides. A telephone device is what rings when its number is called. Calling a number "not associated with the device" will not ring anything at all. The entire point of a phone call is to reach someone else's device. If a user is trying to call someone else's phone through a mobile network using that person's personal identification number, that number must be associated in some way with that phone or the phone cannot be reached.

But the district court's error in reading the claims goes even further. "Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement." *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985) (citation and quotation omitted).[4] This rule, moreover, "is far more than general. It is fixed. It is long and well established. It enjoys an immutable universally applicable status comparatively rare among rules of law. Without it, the entire statutory and

---

[4] *Accord, e.g.*, *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000); *United States v. Telectronics, Inc.*, 857 F.2d 778, 784 (Fed. Cir. 1988); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1054-55 (Fed. Cir. 1988); *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 770 (Fed. Cir. 1983), *overruled on other grounds by SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985).

regulatory structure governing the drafting, submission, examination, allowance, and enforceability of claims would crumble." *D.M.I.*, 755 F.2d at 1574.

The district court's claim construction violates this immutable rule. Dependent Claim 19 of the '706 patent expressly contains the same narrowing limitation on the term "personal identification number" that the district court imported into other claims that lack that express limitation. Claim 19 discloses "[t]he method of claim 18 wherein the personal identification number of the source and the destination user are independent of a particular physical communications unit." A54 (8:55-57). Thus, when the inventor wanted to specify in the claims that a personal identification number is not associated with a device, he did so expressly in Claim 19. Accordingly, the narrow limitations of Claim 19 cannot be read into the broader language of other claims that do not include them. *D.M.I.*, 755 F.2d at 1574. By crafting a specific limitation in Claim 19 providing that the "personal identification number" as used in that claim must be independent of a particular device, the inventor made clear that the term "personal identification number" does not otherwise carry that limitation. Put another way, if the term personal identification number always means that the number is never associated with any device—as the district court held—the limitation in Claim 19 would have been unnecessary.

The district court rejected this argument, reasoning that "Claim 19 depends from Claim 18, a separate independent claim from asserted Claim 1, which recites many differences, including a 'personal identification code.'" A9 (quoting A54 (8:40)). The court also noted that "while Claim 19 recites a 'personal identification number,' that claim is directed to an embodiment where both source and destination users have a personal identification number." A9. This reasoning does not hold water. To be sure, Claim 18, from which Claim 19 depends, does use the slightly different formulation "personal identification code" rather than "personal identification number." It is readily apparent, however, that the inventor used those two terms synonymously.[5] And regardless, it is Claim 19 that contains the express narrowing limitation at issue and Claim 19 uses the term "personal identification number"—the same broad term that the district court construed as a general matter to include that narrow limitation wherever it is used in the patent.

---

[5] Claim 19 expressly refers to the "[m]ethod of Claim 18 wherein the personal identification number of the source and destination user are independent of a particular communications unit." A54 (8:55-57). The only conceivable antecedent for "the personal identification number" used in Claim 19 is the "personal identification code" used in Claim 18. The two terms are thus used interchangeably. *Cf. NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (construing claim term employing definite article "the" as requiring an antecedent basis).

It is similarly immaterial that Claim 19, like other claims involving call routing functions, "is directed to an embodiment where both source and destination users have a personal identification number."  A9.  The district court's construction of the term "personal identification number" would apply to *all* uses of that term in the patent claims, which nowhere distinguish between the personal identification number of the caller and the personal identification number of the person being called.  Whatever the term means, it means the same thing for both users.  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").  And Claim 19 provides irrefutable evidence that the broad term "personal identification number" does not contain the narrowing limitation imported by the court, wherever it is used.

## B.    The District Court's Negative Limitation Is Not Compelled By The Specification.

The specification does not support, much less compel, the district court's "not associated with the device" limitation.  It is possible for a specification to disclaim or disavow the scope of a claim.  But any such disclaimer "must be clear." *Conoco, Inc. v. Energy & Envtl. Int'l L.C.*, 460 F.3d 1349, 1357 (Fed. Cir. 2006). For the specification to override the "ordinary and accustomed meaning of a claim term," the specification must contain "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."  *Teleflex, Inc. v. Ficosa*

*N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  *See also 3M Innovative*

*Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1330 (Fed. Cir. 2013).

There was no clear disavowal of claim scope here.  This is not a case where

the meaning of a term is unclear from the claims, making resort to the specification

necessary.  As shown, the claim language uniformly supports the plain, ordinary

meaning of personal identification number, without the negative limitation

imported by the district court.  The patent would be unworkable with the district

court's narrowing limitation, and the inventor clearly showed in Claim 19 that the

term personal identification number does not inherently include that limitation.

But even if it were permissible for a court to render a patent's claims

inoperable and nonsensical solely by resort to the specification—a dubious

proposition at best—the specification to the '706 patent contains no such clear

disavowal.  When the specification is consulted, "it is necessary to consider the

specification as a whole, and to read all portions of the written description, if

possible, in a manner that renders the patent internally consistent."  *Budde v.*

*Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-80 (Fed. Cir. 2001).  The

specification of the '706 patent, when read as a whole, indicates an intent to adopt

the ordinary meaning of personal identification number that is embodied in the

claim language itself.

Numerous portions of the specification indicate there will be a direct association between a personal identification number and a device when a call is made or received.  As noted, the specification repeatedly refers to the need under the patented method to "ring" a "personal identification number," which is impossible to do unless the personal identification number is associated with the device that is being rung.  *See supra* at 28.  Other portions of the specification similarly associate the personal identification number with a device by ascribing actions to the number itself that could only be accomplished by the device, such as calling, receiving calls, communicating and sending information.[6]  Moreover, the specification contains numerous references to the patented method determining the geographic "location" of a "personal identification number"—whether of a source or destination user.[7]  Particularly given that that number is used to route calls to

---

[6]  *See* A51 (2:32-33) (personal identification numbers "are able to communicate with a personal communications systems switch"); *id*. (2:54) (switch can allow "calls to or from a personal identification number"); A52 (4:59-60) (Figure 4 describes procedure for "connecting the source personal identification number to the destination personal identification number"); *id*. (4:63-64) (the "[personal identification numbers] may make calls to other [personal identification numbers] or regular wireline telephone numbers"); *id*. (4:64-68) (personal identification number "sends" an area code); A53 (5:28-29, 49-50) (system can determine whether a personal identification number is "unreachable," or "not reachable"); *id*. (5:42-43) (personal identification number can have "a mail box number").

[7]  *See*, *e.g.*, A51 (1:36-37) (in a PCS system, personal identification numbers are "not geographically constant and can move about"); *id*. (2:62-67) ("[t]he

users' devices, it is inconceivable that a database could continuously track the geographic location of a personal identification number to call it without that number being associated with the device being called.

Against this consistent mountain of evidence supporting the plain, ordinary meaning of "personal identification number," the district court (*see* A9) relied on a single sentence in the specification stating, with reference to Figure 1 of the patent, that "[t]he personal identification numbers 2 are not associated with any particular communications unit or physical location, but are associated with individual users." A51 (2:31-37). This sentence cannot bear the enormous weight the court put on it, and contains no clear disavowal of the scope of the term personal identification number that is otherwise compelled by its ordinary meaning, the claim language, and the rest of the specification.

This sentence, on its face, provides only that personal identification numbers are "not associated with any ***particular*** communications unit or physical location." *Id*. (2:35) (emphasis added). That qualification is key. The term "particular"

---

location authority 10 is responsible for locating and tracking the personal identification numbers" through a database "of the location of all personal identification numbers"); *id*. (2:67-3:2) (location authority contains "the most recently known location of the personal identification numbers"); A52 (4:21-22) (switch makes request for the "location of the source personal identification number"); *id*. (4:45-46) (the "location of the personal identification number is obtained"); *id*. (5:18-22) (location authority can return the "location of the destination personal identification number").

means "defining of or pertaining to a single or specific person, thing, group, class, occasion, etc., rather than to others or all; special rather than general." *Dictionary.com Unabridged*, Random House, Inc. (dictionary.reference.com/ browse/particular) (Nov. 2013).  Thus, the sentence merely notes that a personal identification number need not be permanently associated with a single, specific communications unit or physical location.  But nothing in this statement disavows any association with devices or locations as a general matter.

That is true as a matter of basic grammar.  As the sentence pertains to the "location" of a personal identification number, it provides that the number is not always associated with a "particular" physical location, but does not disavow that the number will have some physical location at any moment in time.  The sentence could not have meant that a personal identification number is not ever associated with a location because, as noted above, the specification contains numerous references to the physical location of the number.  *See supra* at 33 n.7.  The same is necessarily true for the communications devices that are referred to in a parallel way in the same clause.  As with physical location, the sentence provides that the personal identification number has no permanent association with any particular device but does not disavow that the number can be associated with some device at any moment in time.

As Fenner explained below, this is "precisely the way modern wireless networks work." A176. In present day systems, mobile phone numbers are personal identification numbers because they identify the people using them. They are exchanged by people who want to communicate with each other and are stored in address books as personal identifiers. But they are not permanently associated with a particular device. Under the concept of Local Number Portability ("LNP"), once a user is assigned a mobile phone number, the user can have its carrier (*e.g.*, a service provider like Verizon) program it into a new cell phone, or can subscribe with a new carrier and have the same number programmed into a new cell phone obtained from that carrier. *See id.* (citing *Newton's Telecom Dictionary* at 489 (20th ed. 2004)) ("That's what LNP is all about—the ability to change your phone company and still keep your phone number."). Thus, when someone puts another person's mobile phone number in an address book, that number will identify the person and provide a way to reach him or her, but it will not necessarily be associated with any particular telephone device.

By contrast, the actual, physical cell phone has its own unique and unchanging number called an Electronic Serial Number ("ESN"), which is permanently coded into the cell phone by the manufacturer. *Id*. Thus, the mobile phone number, unlike the ESN, is not associated with any particular device— because it can be programmed into any phone—but it will be associated with some

device whenever a call is being made or received.  This "independence" feature was a basic feature known in the prior PCS art.  *See* Sam Ginn, *Personal Communications Services:  Expanding the Freedom to Communicate*, IEEC Communications Magazine at 30 (Feb. 1991) ("Imagine, too, having a personal telephone number that goes with you wherever you go.") (A1460).

Nothing in the '706 patent adopts a different construction of a personal identification number.  In fact, as already noted, the specification indicates that the claimed personal identification number will normally be a mobile phone number that is associated with a particular device during a call.  *See supra* at 27; A52 (4:63-64) (source personal identification number "may make calls to other [personal identification numbers] or regular wireline telephone numbers").  Accordingly, the sole passage relied on by the district court, read in the context of the entire specification, does not constitute a clear disavowal of any association between personal identification numbers and devices.  Instead, the specification supports Fenner's construction because it "comports with the plain language of the claims."  *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 939 (Fed. 2013) (citation omitted).  The personal identification number need not always be associated with any ***particular*** device, but in order for the patent's methods to operate, it will be associated with ***some*** device when a call is being made or received.

## B.     The District Court's Negative Limitation Is Not Compelled By The Prosecution History.

The district court also erred in concluding that the prosecution history justified importing a negative limitation.  A patentee may claim an invention broadly and expect enforcement of the full scope of that language absent a clear disavowal in the specification.  *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).  The prosecution history only limits the interpretation of claim terms so as to exclude an interpretation that was expressly disclaimed during prosecution in order to achieve issuance of the patent.  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  But only a "clear and unmistakable" disavowal during prosecution overcomes the "heavy presumption" that claim terms carry their full ordinary and customary meaning. *Omega*, 334 F.3d at 1323; *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009).  Only when the patentee "unequivocally and unambiguously" disavows a certain meaning to obtain a patent will prosecution history disclaimer narrow the meaning of the claim consistent with the scope of the claim surrendered.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1350 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1317).  The Court does not rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through such clear and unmistakable disavowal.  *Trading Tech. Int'l, Inc. v. eSpeed, Inc.*,

595 F.3d 1340, 1352 (Fed. Cir. 2010); *Cordis Corp. v. Boston Scientific Corp*., 561 F.3d 1319, 1329 (Fed. Cir. 2009) ("A disclaimer must be 'clear and unmistakable,' and unclear prosecution history cannot be used to limit claims.").

The district court relied on a single statement made during prosecution to distinguish a prior art reference.  In distinguishing U.S. Patent No. 5,210,787 (the "Hayes" patent), the Fenner inventor stated that "[t]he present invention ... is centered around the mobile user, not the mobile telephone."  A9; *see* A2509.  This statement merely recognized that the invention is "centered" around a user rather than a telephone.  It is not a clear and unmistakable disclaimer that the scope of the term "personal identification number" cannot ever involve an association with a device.

The Hayes patent (*see* A1928-41) claims a cellular radio communications network with mobile switching centers, each having base stations with which a mobile user can connect.  The mobile switching centers are "home exchanges" for numbers assigned to them, and store information on the mobile subscribers assigned to those home exchanges.  The Hayes patent involved "subscriber interrogation points" connected the network, which have memory containing information associated with each mobile subscriber (including subscribers' "mobile identification numbers"), identifying either the "home exchange" of that

particular subscriber or other subscriber interrogation points able to identify such a home exchange.  A1933 (3:34-39).

During prosecution, Fenner noted that the conventional methods of the Hayes system, unlike the invention that would become the '706 patent, were unsuitable "because, like conventional wireline services, they are centered around a particular switch and geographical area."  A2508.  The "mobile identification number" used in the Hayes patent "must be assigned to a particular mobile communication switch or home exchange, much like a wireline telephone is."  *Id*.  Under this system, all calls to a mobile number "must be routed through the home exchange, even when the mobile phone is visiting another exchange."  *Id*.

In the sentence seized upon by the court below, Fenner explained that this method was different from the '706 patent because "[t]he present invention, on the other hand, is centered around the mobile user, not the mobile telephone."  *Id*.  Fenner went on to explain that under his invention the mobile user "need not be, unlike a mobile telephone, assigned to a particular home exchange."  *Id*.  Moreover, Fenner explained that his invention, unlike the Hayes patent, requires a billing code in addition to the personal identification code.  A2509.  Accordingly, the system "need not maintain an association between each and every mobile user and a home exchange."  *Id*.

In this passage, Fenner simply explained that Hayes' method, like other conventional cellular system methods at the time, was "centered around a particular switch and geographical area." *Id.*.  Consequently, a user's mobile identification number had to be "assigned to a particular mobile communication switch or home exchange, much like a wireline telephone is." *Id*.  Calls to a mobile number had to be "routed through the home exchange, even when the mobile phone is visiting another exchange." *Id*.  In this manner Hayes method was "centered around … the mobile telephone," because the assigned geographic location of the telephone informed how services were provided.  The user had to be associated with the home exchange.

By contrast, Fenner's invention was "centered around the mobile user," because the user's "personal code"—the personal identification number—is not associated with a home exchange.  When the user logs on to a network, the billing code, separately from the personal identification number, identifies a billing authority that retrieves a service profile.  The service profile provides the needed information, rather than having to consult a home exchange.  The Hayes system does not contemplate a billing code or billing authority.

Thus, when Fenner explained that its invention is "centered around the mobile user, not the mobile telephone" it was not arguing anything about the association or disassociation of a personal identification number with a device.  It

was explaining why, unlike in the Hayes patent, the user no longer needed to be

associated with a geography-based home exchange, like a wireline system is.

Fenner's method eliminates the need for that geographic association by providing a

separate billing code identifying a billing authority that maintains service profiles

not tied to any home exchange.  Nothing in the statement remotely implies that the

claimed personal identification number cannot ever be associated with a device.

Indeed, as explained above, that would render the patent inoperable.

Moreover, the patent was not issued based on any purported disassociation

between personal identification numbers and devices.  *Elekta Instrument S.A. v.*

*O.U.R. Scientific Int'l Co.*, 214 F.3d 1302, 1308 (Fed. Cir. 2000) ("Claims that

have been narrowed ***in order to obtain issuance*** over the prior art cannot later be

interpreted to cover that which was previously disclaimed during prosecution.")

(emphasis added); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571,

1578 (Fed. Cir. 1997) ("We examine the statements and actions of the patentee

before the PTO during prosecution . . . and ask what a competitor reasonably may

conclude the patentee surrendered ***to gain issuance of the patent***.") (emphasis

added, internal citation omitted).  At the end of the prosecution, following an

interview with Fenner's patent attorney, the Examiner entered an "Examiner's

Amendment" as part of the "Notice of Allowability" amending pending Claim 18

(which issued as Claim 1) to add language to distinguish over the prior art of

record.  The patent issued with the addition of the clause "wherein different ones of the plurality of billing authorities may maintain the service profile or a second profile for the mobile user identified by the personal identification number." *See* A53 (6:8-11); A1899-1900.  That amendment was focused on the novelty of what the billing authorities do in maintaining service profiles, not on any purported disassociation between personal identification numbers and devices.

For the invention to be "centered around" a user rather than a phone, it need not disassociate the user's personal identification number with any and all devices. In fact, the magistrate judge's comments during the February 27, 2013 hearing indicate that he employed the "centered around" phrase with a murky level of abstraction.  For example, the court suggested to Fenner's counsel that Fenner "disclaimed the … the centering or the association with the phone," and that Fenner "associated or center[ed] the invention on the user." A1973.  The court also vaguely identified the "centering of this process around the user rather than the phone" as the "focus of the patent" and found its construction necessary because of the purported "important association with the user rather than the device." A1974-75.  Whatever "centering" or "association" the patent has with the user, however, it does not negatively limit the user's personal identification number by *dis*associating it from any and all devices.  As discussed, that is incorrect because a device that can "ring" and "send" numbers, and be "located," is

integral to the telephonic embodiment of the patent's operations.  *See supra* 33 & n.6-7.

Simply describing the patent generally as "centered around" the user makes no "clear and unmistakable" disavowal of the scope of Claim 1.  *Omega*, 334 F.3d at 1323.  The patent can be and is conceptually "centered around" the user without requiring that the user's personal identification number "is not associated with the device."  A10.  In the file history statement relied on by the court, Fenner was talking about something else entirely:  why the user need not be associated with a home exchange under its invention.  Fenner was entitled to the full, unlimited meaning of "personal identification" found in the patent's language and specification, and the district court erred in relying on the prosecution history to import a disfavored negative limitation that would render claims of the patent senseless and inoperable.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order on claim construction, and reverse or vacate the judgment below and remand for further proceedings.  *See*, *e.g.*, *Aventis*, 715 F.3d at 1365; *Howmedica*, 540 F.3d at 1339.

Respectfully submitted,

/s Jonathan S. Franklin
Jonathan S. Franklin
Mark Emery
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

November 12, 2013                    Counsel for Appellant

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

**Page**   **Document**

1       Final Judgment (Doc. 159)

3       Report and Recommendation of United States Magistrate Judge (Doc. 122)

16      District Court's Order Adopting Report and Recommendation of United
        States Magistrate Judge (Doc. 153)

18      U.S. Patent 5,561,706

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| FENNER INVESTMENTS, LTD.,<br><br>           Plaintiff,<br><br>      v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON<br>WIRELESS, METROPCS<br>COMMUNICATIONS, INC., METROPCS<br>WIRELESS, INC., and METROPCS TEXAS,<br>LLC,<br><br>           Defendants. | CIVIL ACTION NO. 6:11-cv-348-LED<br><br>**JURY TRIAL DEMANDED** |

### FINAL JUDGMENT

The Court has considered the entire case file, including all of its prior Orders, and the

Stipulation and Joint Motion for Dismissal and Final Judgment filed by Plaintiff Fenner

Investments Ltd. ("Fenner") and Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon

Wireless") (collectively, the "Parties").  Based upon all of the foregoing,

IT IS ORDERED that, based upon the Report and Recommendation of United States

Magistrate Judge [Docket # 122] ("R&R") construing several of the contested claim elements of

the patent-in-suit including the construction of the term "personal identification number" ("PIN")

and the Court's Order Adopting Report And Recommendation Of United States Magistrate

Judge [Docket # 153] ("Order Adopting R&R"), Claim 1 of United States Patent No. 5,561,706

is found to be NOT INFRINGED by Verizon Wireless and for that reason judgment is entered in

favor of Verizon Wireless and against Plaintiff on all claims of the First Amended Complaint for

Patent Infringement [Docket # 25], subject to and without prejudice to Plaintiff's right to appeal

this Final Judgment, any and all parts of the Court's Order Adopting R&R, and any prior adverse

orders.

IT IS FURTHER ORDERED that Verizon Wireless' counterclaims and defenses including, but not limited to, non-infringement, invalidity and unenforceability of the '706 patent, are DISMISSED WITHOUT PREJUDICE, and Verizon Wireless remains free to reassert such counterclaims and defenses, and to object to or appeal any adverse ruling or order (including any pending objections to the Magistrate's Order on the construction of "mobile user" in Dkt. # 151 ("Memorandum Opinion and Order")) and that the period for any such appeal or objections shall be held in abeyance during the pendency of any appeal by Plaintiff of the present Final Judgment, should Plaintiff's infringement claim regarding the '706 patent be revived for any reason (including but not limited to modification of the Court's claim construction on appeal);

IT IS FURTHER ORDERED THAT all parties shall bear their own attorney fees and costs; and

IT IS FURTHER ORDERED THAT all motions and other requests for relief not otherwise ruled upon are hereby denied or dismissed as moot without prejudice to reassert such issues in the event of a remand.

This is a Final Judgment.

**So ORDERED and SIGNED this 9th day of August, 2013.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.,** | § | |
| | § | |
| **vs.** | § | |
| | § | CASE NO.  6:11cv348 LED-JDL |
| **CELLCO PARTNERSHIP d/b/a** | § | |
| **VERIAON WIRELESS, et al.** | § | |

# REPORT & RECOMMENDATION OF
# UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Cellco Partnership d/b/a Verizon Wireless's ("VZW")

Motion for Summary Judgment and Early Claim Construction. (Doc. No. 89) ("VZW MTN.").

Plaintiff Fenner Investments Ltd. ("Fenner") filed a Response (Doc. No. 93) ("RESPONSE"), and

VZW filed a Reply (Doc. No. 96) ("REPLY"). On February 27, 2013, the Court held a hearing on

the matter. For the reasons set forth herein, the Court adopts the constructions set forth below,

and **RECOMMENDS DENYING** VZW's Motion for Summary Judgment of Non-infringement

(Doc. No. 89).

# BACKGROUND

Plaintiff Fenner Investments, Ltd. ("Fenner") alleges VZW infringes Claim 1 of U.S.

Patent No. 5,561,706 ("the '706 patent").  The '706 patent is titled "System for Managing

Access by Mobile Users to an Interconnected Communications Network where a Billing

Authority is Identified by a Billing Code from the User," and discloses a system for managing a

communication network for mobile users. Claim 1 is the only asserted claim and is set forth

below:

1.  A method of providing access to a mobile user in a
    communications system having a plurality of interconnected
    radio frequency communication switches for selectively

ADDENDUM 3

collecting calls to mobile users via radio frequency links, a
plurality of billing authorities for maintaining service pro-
files of mobile users and a plurality of location authorities
for maintaining current locations of mobile users within the
interconnected communication switches, the method comprising:

    receiving at a radio frequency communication switch a
        personal identification number from a mobile user;

    receiving from the mobile user at the communication
        switch a billing code identifying one of the plurality of
        billing authorities maintaining a service profile for the
        mobile use[r], wherein different ones of the plurality of
        billing authorities may maintain the service profile or a
        second profile for the mobile user identified by the
        personal identification number;

    requesting a service profile of the mobile user from the
        billing authority identified by the received billing code;

    storing in memory the service profile received from the
        billing authority; and

    providing the mobile user access to the switch.

'706 patent at 5: 61–67; 6: 1–14.

In its motion, VZW presented three terms from Claim 1 it felt warranted summary judgment of non-infringement if the Court adopted its construction of those terms. Those terms include, "personal identification number," "billing code," and "mobile user." (Doc. No. 89) Fenner presented its proposed construction of those terms, as well as its positions on infringement in its responsive brief. (Doc. No. 93). The Court heard argument on February 27, 2013.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad*

2

ADDENDUM 4

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms.  *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).  This presumption does not arise when the patentee acts as his own

ADDENDUM 5

lexicographer.  *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'"  *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims."  *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent.  *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent").  The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."  *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance.  *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'")

4

ADDENDUM 6

(citations omitted).  "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted).  "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted).  Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### A.  Disputed Terms

### I.    "personal identification number"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|
| "a number separate from a billing code (as construed herein), | "a number separate from a billing code (as construed herein), | "a number separate from a billing code (as construed herein), identifying an individual system |

5

| identifying an individual system user" | identifying an individual system user, which is associated with the individual and not the device" | user, which is associated with the individual and not the device" |
|---|---|---|

VZW argues that the personal identification number must be associated with the individual and not with a device. VZW MTN. at 8. VZW cites to the specification, which states "[t]he personal identification numbers 2 are not associated with any particular communications unit or physical location but are associated with individual users." '706 patent 2:31–37. VZW argues that the user and the device cannot be one in the same and the use of a gender to describe a "user" indicates the "user" must be a person, not a device. VZW MTN. at 10. VZW further argues that a construction conflating a "user" and a "device" would violate the written description because nowhere does the patent support sending the billing code and personal identification number from a device as opposed to being entered by a person. *Id.* at 12. Finally, VZW asserts the prosecution history supports its construction, citing to a prosecution statement to overcome the prior art Hayes system that disclosed a "mobile identification number." *See* EX. 11 to VZW MTN. at FH000161-62) ("Service in a convention cellular system, as described in Hayes et al., is based on a mobile identification number (MIN)…[t]he present invention, on the other hand, is centered around the mobile user, not the mobile telephone.").

Fenner argues that VZW wrongly imports concepts from other independent claims into independent Claim 1. RESPONSE at 2. Fenner makes a claim differentiation argument that the "personal identification number" need not be associated with the mobile user because Claim 19, which depends from independent Claim 18, recites a personal identification number that is independent of a particular device. *Id.* at 5. Fenner further asserts that nothing in the '706 patent disclaims storing the "personal identification number" in the device that is used to communicate

6

ADDENDUM 8

with the system. *Id.* at 5. Fenner cites to Claim 7 and argues that the association of the "personal identification number" with a device is necessary to achieve the claimed routing function. *Id.* at 6 ("receiving [a] personal identification number of a destination user; [and] routing the call to the destination user…"). Finally, Fenner argues the independence feature was a basic feature known in the prior art. *Id.* at 7 (citing S. Ginn, "Personal Communication Services: Expanding the Freedom to Communicate," Pacific Telesis Group, *IEEE Communications Magazine*, 29(2): 30 (1991)).

The claim language recited in Claim 1 expressly associates the personal identification number with the mobile user. *See* '706 patent at 6:4, 10–11 ('personal identification number from a mobile user;" "mobile user identified by the personal identification number"). The specification supports this association, disclosing "[t]he personal identification numbers 2 are not associated with any particular communications unit or physical location but are associated with individual users." '706 patent 2:31–37. Similarly, the prosecution history reveals that the patentee stated "[t]he present invention, on the other hand, is centered around the mobile user, not the mobile telephone," when distinguishing the "mobile identification number" disclosed in the prior art. Ex. 11 to VZW Mᴛɴ. at FH000161-62.

Fenner's claim differentiation argument that the "personal identification number" need not be associated with the mobile user because Claim 19 recites a personal identification number that is independent of a particular device, is not persuasive. First, Claim 19 depends from Claim 18, a separate independent claim from asserted Claim 1, which recites many differences, including a "personal identification code." '706 patent at 8:40. Further, while Claim 19 recites a "personal identification number," that claim is directed to an embodiment where both source and destination users have a personal identification number. Ultimately, Fenner's arguments are not

persuasive in light of the express language in Claim 1, the specification, and the prosecution history, all of which disclose a personal identification number associated with the mobile user.

Accordingly, the Court finds that "personal identification number" is "a number separate from a billing code (as construed herein), identifying an individual system user, which is associated with the individual and not the device"

## II.     "billing code"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|
| a code, separate from the personal identification number (as construed herein), identifying a particular billing authority (as construed herein) | a code, separate from the personal identification number (as construed herein), identifying a particular billing authority (as construed herein), entered by the mobile user (as construed herein) | a code, separate from the personal identification number (as construed herein), identifying a particular billing authority (as construed herein) |

The parties agree on the basic contours of a construction for the term "billing code," except that VZW wishes to add the requirement that the billing code be "entered by the mobile user." VZW briefs the same arguments for billing code alongside its arguments presented above for "personal identification number." VZW further cites to the specification, which states:

> The user attempts to logon to a PCS switch at step 20 by entering his personal identification number 2 and billing code…The PCS switch receives at step 22 the personal identification number 2 and billing code from the user.
>
> '706 patent at 4:1–7.

Fenner argues that adopting VZW's construction would improperly read the preferred embodiment onto the claim. RESPONSE at 8. Fenner notes that the claim does not recite a billing code being entered by a user; rather, it merely calls for a switch receiving a billing code. *Id.* citing '706 patent at 4:1 –7; Fig. 3.

While VZW wishes to add the limitation that the personal identification number be entered by the user, that additional requirement is not recited in Claim 1, where it easily could have been had the patentee intended to require the personal identification number be entered by the mobile user. Rather, as Fenner points out, VZW's support for this limitation comes from the preferred embodiment. *See Phillips,* 415 F.3d at 1313 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Accordingly, the Court finds that "billing code" requires no further construction other than the existing previous construction—the portion of the construction upon which the parties agree: "a code, separate from the personal identification number (as construed herein), identifying a particular billing authority (as construed herein)."

### III.   "mobile user"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|
| "an individual using a mobile communication device" <br> Alternatively: <br> "from an individual system user using a wireless unit" | "a user who is mobile" | Not ripe for construction |

VZW argues that the term "mobile," as used in Claim 1, refers to "the ability of the 'user' to be mobile—not to any 'mobile communications device.'" VZW Mᴛɴ. at 15. VZW points to the specification to support its assertion, where the specification clearly discloses that the present invention can be used with "wire line and RF devices." *Id.* citing '706 patent at 2:31–35 ("[a] plurality of personal identification numbers 2 are able to communicate with a personal communications systems switch 4 via wire line and radio frequency links.").

Fenner argues that because the specification references a "communication unit" and "handset" it would be readily apparent to one of ordinary skill in the art that a person does not

9

communicate with a radio frequency switch without the assistance of a wireless mobile device. RESPONSE at 10–11, citing '706 patent at 2:36; 4:48.

For reasons that will be discussed in the following section, the Court finds that the terms involving "mobile user," are not sufficiently presented to resolve the parties' dispute on claim construction.

## B.  Summary Judgment of Non-infringement

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for summary judgment in a patent case is no different. *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

The determination of infringement requires a two-step analysis. First, the court construes the claims at issue to determine the scope and meaning at claim construction; next, the court compares the construed claims of the patent against the accused products. *See, e.g., Business Objects, S.A. v. Microstrategy, Inc.,* 393 F.3d 1366, 1371 (Fed. Cir. 2004); *Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1304 (Fed. Cir. 1999). Importantly, claim construction is a question of law, whereas infringement is a question of fact. *See Frank's Casing Crew and Rental Tools, Inc. v. Weatherford Int'l, Inc.,* 389 F.3d 1370, 1376 (Fed. Cir. 2004). Therefore, "summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Pitney Bowes,* 182 F.3d at 1304.

VZW has failed to set out a non-infringement position based on the Court's construction of "billing code," which does not require the user to enter the billing code. VZW states only that a user would not be aware of its existence when it is assigned to the device at the time of registration, but this position does not resolve infringement as a matter of law, leaving a genuine issue of material fact as to whether a user who turns on a device may satisfy this claim limitation. Further, for reasons explained below, the Court declined to construe "mobile user" based on the positions presented by the parties in their briefing. Thus, based on the Court's constructions set out herein, the only limitation that would render summary judgment in VZW's favor if not met by the accused system is "personal identification number."

As to the personal identification number, VZW argues that its accused CDMA system does not infringe Claim 1 of the '706 patent because the personal identification number is received from the mobile device and not the mobile user. VZW MTN. at 17. VZW maintains that this authentication process is "transmitted by the phone automatically upon registration without any involvement or knowledge of the user of the phone." *Id.* VZW states that Fenner's infringement contentions identify a value called the "NAI" as containing both the personal identification number and billing code, and that value is composed of the MDN ("mobile directory number") and the "realm." *Id.* VZW then goes on to argue that the MDN, which is the alleged personal identification number, is associated with the device and transmitted by the device such that the user does not take any action with respect to the MDN. *Id.* at 18. VZW points out that the MDN is the same number as the telephone number used to call the device, and that the MDN is the equivalent of the MIN in the Hayes prior art system, where the network transmits the MIN/MDN to the network during registration. *Id.* at 18–19. Finally, VZW argues that Fenner's contention that infringement occurs when a mobile user turns on a mobile device

should be rejected for reasons set forth by the Federal Circuit in *TPL*,[1] where the court rejected plaintiff's attempt to conflate a "user" and a "device." *Id.* at 19.

Fenner maintains that the limitation "not associated with device" does not preclude "storing the personal identification number in the device." RESPONSE at 15. Fenner urges that a reasonable jury may determine that limitation is met "even when the system user's personal identification number is stored in the device." *Id.*

While the Court finds that the personal identification number is associated with the user and not the device, at the present it cannot state as a matter of law that infringement cannot occur under Fenner's theory that the "association limitation" is satisfied where the personal identification number is stored in the mobile device. At the hearing, Fenner argued that this limitation is met when a call is placed by a mobile user, which then associates the personal identification number with the user automatically through the device. VZW cites *TPL* to argue that such a theory is not proper as it conflates the user and the device. VZW MTN. at 19. However, in *TPL* the court construed "receiving user" and rejected plaintiff's attempts to construe the term as a combination of a device and a person. *TPL*, 700 F.3d at 492. Here, Fenner has not proposed to construe "mobile user" as the combination of a device and a person. Instead, Fenner argues that the personal identification number, though stored in the device, is still associated with the user of the device. The '706 patent does not appear to preclude such a theory, and the Court found that Claim 1 of the '706 patent does not require that the personal identification number be entered by the user. In this light, the issue that the Court finds significant, but not resolved in the parties' proposed constructions of "mobile user," is whether the '706 patent requires the "mobile user" to be the person using the device or the person who owns the mobile device.

---

[1] *Technology Patents LLC, v. T-Mobile (UK) Ltd. et al.*, 700 F.3d 482, 497 (Fed. Cir. 2012).

For the reasons stated herein, the Court finds summary judgment improper at the present time. The Court therefore **RECOMMENDS DENYING** VZW's Motion without prejudice to re-urging at the dispositive motion stage.[2]

### CONCLUSION

The Court sets forth the foregoing construction, and **RECOMMENDS DENYING** VZW's Motion for Summary Judgment of Non-infringement. Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**SIGNED this 19th day of December, 2011.**
**So ORDERED and SIGNED this 25th day of April, 2013.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[2] VZW should first file a letter brief for such a motion pursuant to the Court's DCO.

13

ADDENDUM 15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **FENNER INVESTMENTS, LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION No. 6:11cv348** |
| | § | |
| **CELLCO PARTNERSHIP d/b/a** | § | |
| **VERIZON WIRELESS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636.  The Report and Recommendation of the Magistrate Judge (Doc. No. 122) ("R&R"), which contains his construction of disputed terms in U.S. Patent No. 5,561,706  ("the '706 Patent"), as well as his recommendation that Defendant Cellco Partnership d/b/a Verizon Wireless's ("VZW") Motion for Summary Judgment (Doc. No. 89) be denied, has been presented for consideration.  Plaintiff Fenner Investments, Ltd. ("Fenner") has filed objections and a motion for reconsideration to the R&R (Doc. No. 129) ("FENNER OBJ.") and VZW filed a Response (Doc. No. 135). VZW also filed objections and a motion for reconsideration to the R&R pursuant to Federal Rule of Civil Procedure 72(a) (Doc. No. 130) ("VZW OBJ.").

Having reviewed the parties' submissions, the Court is of the opinion that Fenner's objection to the Magistrate Judge's construction of "personal identification number" requires no further clarification or alteration. As to VZW's request for reconsideration of the Magistrate

ADDENDUM 16

Judge's construction of "billing code," VZW expands upon what it offered in its initial claim construction briefing of the term, but the positions argued by VZW do not warrant any alteration to the Magistrate Judge's construction of the term. VZW's proposed construction for "billing code" requires that the mobile user enter the billing code. However, Claim 1 of the '706 patent recites "receiving from the mobile user at the communication switch a billing code…" '706 patent at 6:5–6. Thus, VZW's proposed construction would conflate "entering" by the mobile user with "receiving" from the mobile user, and thereby impose an affirmative requirement on the mobile user that is not otherwise supported by the '706 patent. Accordingly, the Court finds the constructions of the Magistrate Judge are correct.

Finally, as the parties have filed supplemental briefing on the term "mobile user," (Doc. Nos. 143, 144, 147, 148),  the Court agrees with the Magistrate Judge that matter was not yet ripe for a determination of summary judgment. Therefore the Court finds the Magistrate Judge's denial of VZW's Motion for Summary Judgment proper.

Accordingly, the Court **ADOPTS** the Report & Recommendation of the United States Magistrate Judge as the opinion of this Court. All objections are overruled and all motions for reconsideration are **DENIED**.

 **SIGNED this 19th day of December, 2011.**
 **So ORDERED and SIGNED this 30th day of July, 2013.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

ADDENDUM 17

US005561706A

# United States Patent [19]

## Fenner

[11] **Patent Number:** **5,561,706**

[45] **Date of Patent:** **Oct. 1, 1996**

[54] **SYSTEM FOR MANAGING ACCESS BY MOBILE USERS TO AN INTERCONNECTED COMMUNICATIONS NETWORK WHERE A BILLING AUTHORITY IS IDENTIFIED BY A BILLING CODE FROM THE USER**

[76] Inventor: **Peter R. Fenner**, 600 Goodwin Dr., Richardson, Tex. 75081

[21] Appl. No.: **952,998**

[22] Filed: **Sep. 29, 1992**

[51] Int. Cl.$^6$ ............................ H04Q 7/38; H04M 11/00; G06F 17/30

[52] U.S. Cl. ............................ **379/60**; 379/194; 395/200.9; 395/600

[58] Field of Search .................................. 395/800, 200, 395/325, 200.09; 455/33.1, 53.1; 379/58, 93–95, 114, 120, 121–128, 145, 185, 188–200, 210–212, 222, 59, 60; 355/33.2

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,845,740 | 7/1989 | Tokuyama et al. | 379/91 |
| 4,860,341 | 8/1989 | D'Avello et al. | 379/91 |
| 4,899,373 | 2/1990 | Lee et al. | 379/207 |
| 4,955,049 | 9/1990 | Ghisler | 379/58 |
| 5,095,480 | 3/1992 | Fenner | 370/94.1 |
| 5,148,472 | 9/1992 | Freese et al. | 379/59 |
| 5,206,899 | 4/1993 | Gupta et al. | 379/120 |
| 5,210,787 | 5/1993 | Hayes et al. | 379/60 |
| 5,241,598 | 8/1993 | Raith | 380/21 |
| 5,247,520 | 9/1993 | Geise et al. | 370/94.1 |
| 5,247,698 | 9/1993 | Sawyer et al. | 455/33.1 |
| 5,255,207 | 10/1993 | Mizikovsky | 379/58 |
| 5,260,987 | 11/1993 | Mauger | 379/58 |
| 5,276,868 | 1/1994 | Poole | 395/600 |
| 5,282,244 | 1/1994 | Fuller et al. | 379/230 |
| 5,303,286 | 4/1994 | Wiedeman | 379/59 |
| 5,335,278 | 8/1994 | Matchett et al. | 380/23 |
| 5,341,410 | 8/1994 | Aron et al. | 379/59 |

### OTHER PUBLICATIONS

Wittern et al., "Arithmetic Coping for Data Compression", Communications of the ACM, Jun. 1987 pp. 520–530 v30 N6.

"Intelligent Network: A Distributed System" by C. S Head, IEEE Communications Magazine, Dec. 1988, vol. 26, No. 12.

"PCN: Son of Cellular? The Challenges of Providing PCN Service" by R. J. Lynch Bell Atlantic Mobile Systems, IEEE Communications Magazine, Feb. 1991, vol. 29 No. 2.

"Personal Communications Services: Expanding the Freedom to Communicate" by S. Ginn Pacific Telesis Group, Feb. 1991, vol. 29, No. 2.

(List continued on next page.)

*Primary Examiner*—Thomas G. Black
*Assistant Examiner*—Jack M. Choules
*Attorney, Agent, or Firm*—Marc A. Hubbard; Winstead Sechrest & Minick

[57] **ABSTRACT**

A method and apparatus for managing a communications network for mobile users, each of which has a personal identification number, includes a network of communications switches for connecting calls between mobile users using the personal identification number as addresses. A plurality of billing authorities maintain service profiles and communicate with the communications switches. Also in communication with the switches are a plurality of location authorities. Each mobile user is assigned to a location authority. Each location authority tracks which switch, if any, each of its assigned mobile users is logged on to and permits logging onto only one switch at a time. A mobile user may subscribe to a plurality of billing authorities and maintain a plurality of service profiles with these authorities. A billing code entered by a mobile user designates a billing authority for a call. The billing authority forwards to the switch, if the switch is not already storing it, its service profile for the mobile user. A mobile user may contract with a location authority separate from the billing authority. Each communications switch includes a table for storing a limited number of individual service profiles. The directory table within the switch is linked to a number of queue lists for indicating the status of each service profile stored within the table.

19 Claims, 3 Drawing Sheets



**5,561,706**

Page 2

OTHER PUBLICATIONS

"Personal Communications Services: The Next Technological Revolution" by R. M. Singer, D. A. Irwin, Hopkins & Sutter, IEEE Communications Mag., Feb. 1991, vol. 29. No. 2.

"Wireless Network Directions" by I. M. Ross, AT&T Bell Laboratories, IEEE Communic. Magazine, Feb. 1991, vol. 29, No. 2.

"Working–Set Coprocessor" by M. Milenkovic Technical Report 89–CSE–8 Dept. of Computer Science and Eng., SMU, Dallas, TX, Mar. 1989.



Fig.1

Fig.2



*Fig.3*



*Fig.4*

5,561,706

**1**

## SYSTEM FOR MANAGING ACCESS BY MOBILE USERS TO AN INTERCONNECTED COMMUNICATIONS NETWORK WHERE A BILLING AUTHORITY IS IDENTIFIED BY A BILLING CODE FROM THE USER

### TECHNICAL FIELD

The present invention relates to a system for managing a communication system, and more particularly to a system for managing a communication system containing a plurality of mobile personal identification numbers each corresponding to a system user.

### BACKGROUND OF THE INVENTION

Present telephonic communications consist of a plurality switching units connected to individual telephones. Current billing and system management procedures are associated with the telephones present in a household or business. Thus, when a telephone is used to make a call, the billing charges are associated with the telephone and not with the individual making the call.

The concept of personal communications services (PCS) has been developed as a method for identifying telephone service independent of a telephone unit. The PCS concept envisions each telephone user having a personal identification number. Billing and call servicing are identified with the individual personal identification numbers and not with a telephone unit. The individualized nature of a PCS system raises several problems.

First, present telephone communication numbering and addressing systems are geographically oriented since the source telephone and the destination telephone numbers are always in predictable and set locations. Under the PCS concept, the personal identification numbers are not geographically constant and can move about. Thus, a system is required that is capable of locating and tracking personal identification numbers such that calls can be set up with and billed to the proper user. To date, few solutions have been presented as to how the management and billing of mobile personal identification numbers can be accomplished. Thus, a need has arisen for a system capable of locating and tracking personal identification numbers such that billing and connecting procedures may be accomplished.

### SUMMARY OF THE INVENTION

The present invention overcomes the foregoing and other problems by means of a mobile address management system. The system uses multiple location authorities to track the locations of personal identification numbers and multiple billing authorities to maintain the services and the billing costs associated with a personal identification number (PID).

Each billing authority stores service profiles that are associated with personal identification numbers for which it has billing responsibility. The service profile describes the services for which a personal identification number is authorized. A personal identification number may be associated with multiple service profiles. For example, a personal identification number can have separate service profiles for personal calls and for business calls.

Each location authority is responsible for keeping track of the location of the personal identification numbers assigned to it. The location authority also has a fraud detection means to inform a PCS switching node of fraudulent uses of personal identification numbers attempting to use the node.

**2**

A fraud message is sent when concurrent or inconsistent uses of a personal identification number are detected by the system.

Switching means are capable of storing the service profiles associated with a personal identification number. Each profile within the switch is linked to one of several queue means indicating the status of a personal identification number.

### BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the present invention and the advantages thereof, reference is now made to the following detailed description taken in conjunction with the accompanying drawings.

FIG. 1 is a block diagram illustrating the general architecture of a mobile address system in accordance with the present invention;

FIG. 2 is a block diagram illustrating the internal architecture of a personal communications system switch;

FIG. 3 is a flow, diagram illustrating the process for logging on to a switch; and

FIG. 4 a flow diagram illustrating the procedure for connecting a call between a source personal identification number and a destination personal identification number.

### DETAILED DESCRIPTION OF THE INVENTION

Referring now to FIG. 1, wherein there is shown a block diagram of the present invention. A plurality of personal identification numbers 2 are able to communicate with a personal communications systems switch 4 via wire line and radio frequency links. The personal identification numbers 2 are not associated with any particular communications unit or physical location but are associated with individual users.

The personal communications systems PCS switch 4, which will be more fully discussed later with respect to FIG. 2, has access to multiple billing authorities (6) via the standard telephone signalling system. Each billing authority 6 has access to a data base 8 of personal identification number service profiles which it manages. A billing code supplied by a billing authority to the PID user identifies a particular billing authority. A service profile identifies the services available to a particular personal identification number 2. A personal identification number 2 may have several service profiles associated with it. For example, one service profile can be associated with business uses, and another service profile can be associated with personal uses. Each service profile can be maintained by a different billing authority. The billing authority 6 allows the personal communications system switch 4 to determine whether to allow calls to or from a personal identification number and to determine what services are provided to the user. The billing authority employs a fraud protection means 7 for tracking the amount of time a PID is logged onto a particular switch. This means is responsible for preventing fraudulent billing by a switch operator.

A location authority 10 interacts with both the personal communications systems switch 4 and the billing authority 6. The location authority 10 is responsible for locating and tracking the personal identification numbers 2 assigned to its geographic area. This is accomplished by means of a data base 12 of the location of all personal identification numbers having their home base in the operating area of the location authority 10. The data base 12 is updated with the most

ADDENDUM 23

5,561,706

3

recently known location of the personal identifications numbers 2.

A fraud protection means 14 is a part of the location authority 10 responsible for preventing fraudulent uses of a personal identification number 2. The fraud protection means 14 uses a check out protocol to determine if a personal identification number 2 is active in only one location. When a personal identification number is found to be active in two non-adjacent locations or active in a location that is not possible according to distance/time checks, the switch node attempting to check out the personal identification number is sent a fraud error message.

The PCS switch node also contains a directory assistance package 25. The directory assistance package 16 allows an individual to call users by name only. The name is automatically converted to a personal identification number. A distributed national database of personal identification numbers and the area codes of the location authorities of those numbers allows calling of a personal identification number when the home location authority is not known.

Referring now to FIG. 2, there is shown the architecture of a personal communications system switch active number database 4 of the present invention. This database maintains a table of active personal identification numbers, their service profiles, and the switch point to which they are currently connected. personal identification numbers 2 received from a user during logon or call setup are compressed by means of an arithmetic compression means 15 to an integer value 16 which acts as a pointer into a directory storage table 17 containing record storage areas for storing the service profiles and ports presently accessed by the switch 4. The apparatus and method for arithmetic compression and service profile storage can be similar to that described in co-pending application serial No. 07/737,147 now Pat. No. 5,498,258, filed Jul. 29, 1991 (attorney docket number 18945-1003).

All records in the directory storage table 17 are linked into one of four status queues. The free list 18 is a list of records not assigned to a personal identification number 2 and, thus, are not storing a service profile. When a new personal identification number 2 logs on to the switch 4, a record from the free list 18 list is assigned to the personal identification number 2.

The inactive queue 19 lists all inactive personal identification numbers in the order each has been inactive. Records at the front of the queue have been inactive the longest and are the least recently used. When a new personal identification number 2 logs onto a switch 4 and the free list 18 is empty, a record from the front of the inactive queue 19 is reassigned to the new personal identification number 2. The personal identification number 2 which was using the record is returned to its location authority.

The active queue 21 lists records ordered by the length of time the personal identification number 2 has been active in a call. The personal identification numbers 2 are placed in this list when a call set up procedure completes with a connection. Finally, the billing queue 23 lists records, whose billing information has not yet been recorded, ordered by the time the connection to a destination personal identification number 2 was terminated. A billing process (not shown) posts billing information from the first record in the queue 23 to an auxiliary data base (not shown). When the billing information has been pooled, the record is returned to the inactive queue 19.

Referring now to FIG. 3, there is presented an illustration of the procedure for logging onto a personal communica-

4

tions system switch 4. The user attempts to logon to a PCS switch at step 20 by entering his personal identification number 2 and billing code. The billing code can be any number code indicating a billing authority who maintains the service profile to be used. The PCS switch receives at step 22 the personal identification number 2 and billing code from the user. At inquiry step 24, the PCS switch 4 determines if the requested service profile for the personal identification number is already located in its directory storage table 17. If the service profile is not stored in the directory storage table 17 of the switch, the switch will request at step 26 the service profile from the billing authority 28. Before a service profile is forwarded to the PCS switch 4 by the billing authority 28, an inquiry is made at step 30 to determine if the source PCS switch is within the operating service area allowed by the service profile for the personal identification number. If the source PCS switch is not within the service area defined by the service profile, logon access is denied at step 32. If the switch is within an allowed service area, the service profile is returned to the switch at step 33.

At step 34, the switch makes a request for the location of the source personal identification number. The request is made to a location authority 35 identified by the service profile. At the location authority a determination is made at inquiry step 36 as to whether the source personal identification number has already been checked out. If the location of the source personal identification number is not checked out from the location authority 35, the location is returned to the PCS switch at step 38. However, if the location is presently checked out at step 36 the location authority requests at step 39 return of the location from the switch having control of the location.

Before return of the location of the personal identification number, the status of the personal identification number is determined at inquiry step 42. If it is determined at inquiry step 42 that the personal identification number is inactive, billing or active in an adjacent switch then the location of the personal identification number is returned to the source PCS switch at step 38. If the personal identification number is determined to be currently or recently active in a nonadjacent switch at step 42, then a possible fraud message is sent to the source switch at step 46 and additional information may be taken from the source PID caller at step 56.

Once the location of the personal identification number is obtained at step 38, the service profile is compared at step 48 with the services available on the current switch to determine the services the switch should provide. The handset is queried at step 50 to determine if additional information is required to establish the services to be provided. If additional information is not required, the logon to the switch is established at step 54. If additional information is required the information is requested and supplied at step 56. The switch determines if the logon is complete at inquiry step 58 and notifies the user of the success or failure of the logon process at step 54 or 32. After service selections are completed the switch informs the user of the effective connection and usage rate they will be charged for the requested service.

Referring now to FIG. 4, the procedure for connecting the source personal identification number to the destination personal identification number is illustrated. After the source personal identification number has logged on to the PCS switch, the PID may make calls to other PID's or regular wireline telephone numbers. The source PID sends the destination area code, destination personal identification number and the source service profile designation to the switch at step 60. The source switch determines at inquiry

ADDENDUM 24

5,561,706

**5**

step **62** if the destination personal identification number is stored in its directory storage table. If the destination PID is stored in the local switch then the set-up proceeds to step **70**. (i.e. this is a local call.) If the personal identification number is not stored in the directory storage table, a request is sent at step **64** to the destination location authority **65** identified by the home area code of the destination personal identification number.

At the destination location authority **65**, an inquiry is made at step **66** to determine if the requested location is checked out. If the location is not checked out, a message is sent at step **68** to the source PCS switch indicating that the destination personal identification number is not available at the present time. (i.e. it has not logged-on to any PCS switch and cannot be contacted.) If a voice mail box number is available for the destination, then it could also be returned to the source switch.

If the destination personal identification number is located in the directory storage table of the source PCS switch or if the destination location authority **65** returns the location of the destination personal identification number at step **69**, the source switch examines at step **70** the service profile of the source personal identification number and determines at inquiry step **72** if the destination personal identification number is at a location permitted access by the source personal identification number. If the destination location is invalid, the system proceeds to step **68** and notifies the user that the destination personal identification number is unreachable. If the destination is valid, the destination switch is sent a call set-up message at step **74**.

On receipt of the call set-up message, the destination switch determines if the destination personal identification number is active or inactive at inquiry step **76**. If the destination personal identification number is active, an inquiry is made at step **78** to determine if a mail box number, call waiting, or other busy service is available for the destination personal identification number. When the mail box number or other busy service is not available, the system proceeds to step **68** and the user is notified the destination personal identification number is not available (i.e. busy signal). If the destination personal identification number has a mail box number, the mail box number is returned to the source caller at step **80** and the system returns to step **62**.

When the destination personal identification number is not active, the destination switch attempts to ring the destination personal identification number at inquiry step **82**. If the number does not ring, the system moves to step **68** and the user is notified the destination personal identification number is not reachable. If the destination personal identification number does ring, the call is either completed or there is no answer at step **84**.

Although a preferred embodiment of the invention has been illustrated in the accompanying drawings and described in the foregoing Detailed Description, it will be understood that the invention is not limited to the embodiment disclosed, but is capable of numerous rearrangements and modifications of parts and elements without departing from the spirit of the invention.

What is claimed is:

1. A method of providing access to a mobile user in a communications system having a plurality of interconnected radio frequency communication switches for selectively connecting calls to mobile users via radio frequency links, a plurality of billing authorities for maintaining service profiles of mobile users and a plurality of location authorities for maintaining current locations of mobile users within the

**6**

interconnected communication switches, the method comprising:

receiving at a radio frequency communication switch a personal identification number from a mobile user;

receiving from the mobile user at the communication switch a billing code identifying one of the plurality of billing authorities maintaining a service profile for the mobile use, wherein different ones of the plurality of billing authorities may maintain the service profile or a second profile for the mobile user identified by the personal identification number;

requesting a service profile of the mobile user from the billing authority identified by the received billing code;

storing in memory the service profile received from the billing authority; and

providing the mobile user access to the switch.

2. The method of claim 1 further comprising the steps of:

arithmetically compressing the personal identification number to unique integer index value;

storing the service profile in the database record pointed to by the integer index value.

3. The method of claim 1 further comprising:

maintaining a service profile for each mobile user active on the communications switch in the database memory; and

overwriting an existing service profile record of inactive mobile users with new service profile received from new mobile users when an additional mobile user logs onto the switch and the number of service profiles stored by the database memory of the communication switch exceeds predefined capacity.

4. The method of claim 1 further comprising the step of requesting location for the mobile user from a location authority indicated by the received mobile identification number.

5. The method of claim 1 wherein access to the communication switch is not provided to the mobile user if the one of the plurality of location authorities indicates that the mobile user is on another switch.

6. The method of claim 1 further comprising the steps of:

receiving personal identification number of a destination mobile user;

checking whether the destination mobile user is logged onto the switch;

requesting location of the destination mobile user from a location authority indicated by the destination personal identification number if the destination mobile user is not logged onto the switch;

routing the call to a switch at which the destination mobile user is located.

7. The method of claim 1 further comprising:

receiving personal identification number of a destination user;

routing the call to the destination user only if calls to the destination location are permitted by the service profile of the source mobile user.

8. The method of claim 1 wherein mobile user is denied log-on if the switch is not in valid service area for the service profile maintained by the billing authority identified by the billing code.

9. The method of claim 1 further comprising step of checking whether a service profile from the billing code received by the switch is currently stored by the switch and, if not, then requesting the service profile from the billing authority.

5,561,706

7

10. A method of providing access to a mobile user in a communications system having a plurality of interconnected radio frequency communication switches for selectively connecting calls to mobile users via radio frequency links, a plurality of billing authorities for maintaining service pro- 5 files of mobile users and a plurality of location authorities for maintaining current locations of mobile users within the interconnected switches, the method comprising:

receiving at a radio frequency communication switch a personal identification number from a mobile user; 10

arithmetically compressing the personal identification number to unique integer index value;

storing a service profile in the database record pointed to by the integer index value; and 15

providing the mobile user access to the switch according to the service profile.

11. The method of claim 10 further comprising:

maintaining a service profile for each mobile user active on the communications switch in the database memory; 20 and

overwriting an existing service profile record of inactive mobile users with new service profile received from new mobile users when an additional mobile user logs onto the switch and the number of service profiles 25 stored by the database memory of the communication switch exceeds predefined capacity.

12. The method of claim 10 further comprising the steps of:

receiving personal identification number of a destination 30 mobile user;

arithmetically compressing the destination personal iden- tification number to determine whether a service profile for mobile user is stored at the switch and is logged 35 onto the switch;

requesting location of the destination mobile user from a location authority indicated by the personal identifica- tion number if the destination mobile user is not logged onto the switch; and 40

routing the call to a switch at which the destination mobile user is located.

13. The method of claim 10 further comprising the step of requesting location for the mobile user from a location authority indicated by the received mobile identification 45 number.

14. The method of claim 13 wherein access to the switch is not provided to the mobile user if the location authority indicates that mobile user is active on another switch.

15. A method for controlling calls from a mobile users in 50 a communications network having a mobile communication switch interconnected with other communication switches, the method comprising the steps of:

receiving at a local mobile communications switch an identification number from a mobile user; 55

accessing a database of service profiles of mobile users maintained at the switch and searching for a service profile corresponding to the identification number of the mobile user;

8

if the database of service profiles does not include the service profile for the mobile user,

requesting the service profile of the mobile user from a billing authority indicated by a billing authority designator received from the mobile user, the billing authority being responsible for maintaining the ser- vice profile for the mobile user, and

requesting a location for authorizing the log on of the mobile user from a locating authority indicated by a location authority designator received from the mobile user; and

logging the mobile user onto the mobile communica- tions switch upon the switch's receipt of the service profile from the billing authority and the location from the location authority;

wherein accessing the database of service profiles stored at the mobile communication switch includes arithmetically compressing the identification number of the source mobile user to an integer value, the integer value pointing to a location in the database storing the service profile.

16. The method of claim 15 wherein the user maintains service profiles at multiple billing authorities.

17. The method of claim 15 wherein the location authority authorizes the mobile communications switch to log on the mobile user if the mobile user is not logged onto a second communications switch; and, wherein, if the mobile user is logged onto another communications switch, the location authority requests the second mobile communications switch to log off the mobile user before permitting the mobile user to log onto the first communications switch.

18. In a communications network having a plurality of interconnected communication switches, and in which users are identified by a personal identification code wherever that user is located within the communications network, a method for completing a call from a source to a destination user comprising:

receiving from a source user logged onto a first commu- nication switch a personal identification code of a destination user to whom a call is to be routed;

determining whether the destination user is currently logged onto the first communication switch; and

if the destination user is not logged onto the first com- munication switch,

identifying a location tracking authority assigned to the personal identification code of the destination user,

requesting from the location tracking authority an iden- tity for a destination communication switch on which the destination user is currently logged onto,

receiving the identity of the destination communication switch at the first communication switch, and

routing the call to the destination communication switch.

19. The method of claim 18 wherein the personal identi- fication number of the source and the destination user are independent of a particular physical communications unit.

\* \* \* \* \*

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 5,561,706                                          Page 1 of 1
DATED        : October 1, 1996
INVENTOR(S)  : Peter R. Fenner

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 2,
Line 21, "flow," should read -- flow --;
Line 23, "FIG. 4" should read -- FIG. 4 is --.

Column 6,
Line 8, "use," should read -- user --;

Signed and Sealed this

Eighteenth Day of May, 2004



JON W. DUDAS
*Acting Director of the United States Patent and Trademark Office*

# CERTIFICATE OF SERVICE

I certify that on November 12, 2013, this Confidential Brief for Appellants

was served by email via the Court's CM/ECF system upon the following counsel:

Kevin Paul Anderson
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC 20006-2304
(202) 719-3586
Email: kanderson@wileyrein.com

*Counsel for Appellee*

s/ Jonathan S. Franklin
Jonathan S. Franklin

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because this brief contains 10,052 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements

of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally

spaced typeface using Microsoft Word 2010 in 14-point Times New Roman

typeface.


s/ Jonathan S. Franklin
Jonathan S. Franklin

Counsel for Appellant